**SIERRA CLUB, et al., Plaintiffs,**

v.

**Thomas D. LARSON, et al., Defendants.**

**Civ. A. No. 91–10898–C.**

United States District Court,
D. Massachusetts.

July 30, 1991.

Thomas B. Bracken, Bracken & Bracken, Boston, Mass., for plaintiffs.

Judith S. Yogman, U.S. Attorney's Office, William L. Pardee and Pierce O. Cray, Atty. General's Office, Boston, Mass., for defendants.

Harold Hestnes, Hale & Dorr, James K. Brown, Foley, Hoag & Eliot, Joel Z. Eigerman, McCormack & Putziger, Ralph Abree Child, Palmer & Dodge, G. Marshall Moriarty, Ropes & Gray, Boston, Mass., for amicus curiae, Move Massachusetts 2000.

---

## MEMORANDUM

CAFFREY, Senior District Judge.

This motion is before the Court on the plaintiffs', Sierra Club and certain other individuals, motion for a preliminary injunction. The plaintiffs brought this action to enjoin the federal and state defendants from any further construction of the Central Artery/Third Harbor Tunnel Project (the "Project" or "CA/T"). The plaintiffs contend that the CA/T's proposed ventilation facility does not comply with the preconstruction review and permit procedure required by federal and state statutes, including the Clean Air Act, 42 U.S.C. §§ 7401–7642 (1977).

The proposed tunnel ventilation system is comprised of ducts and fans housed in six buildings located along its route. These proposed facilities do not generate any pollution, they are simply a means of ventilat-ing and discharging the vehicle exhaust from the CA/T. The plaintiffs argue that the Clean Air Act mandates that emission control devices be installed in these facilities. The plaintiffs further contend that the ventilation system is subject to preconstruction review by the Department of Environmental Protection ("DEP") under regulation 310 C.M.R. 7.02. This regulation, if applicable would require an adjudicatory administrative hearing and judicial review prior to construction of the facility. The DEP, however, has determined that regulation 7.02 should not be applied to the ventilation facility, and that a new regulation be devised to govern the facility. The new regulation, 310 C.M.R. 7.38, provides for a "certification and approval procedure" with a legislative-type nonadjudicatory hearing. The certification and approval process is currently underway. The DEP has also submitted regulation 7.38 to the Environmental Protection Agency ("EPA") for review as required by the Clean Air Act. This submission is also presently under review by the EPA.

Plaintiffs ask this Court to issue a preliminary injunction pursuant to Fed. R.Civ.P. 65 to prevent the defendants from commencing additional construction of any portion of the Project, including advertising and accepting bids for construction, applying for permits, prosecuting eminent domain proceedings, taking soil samples, demolishing existing structures, and continuing with the final design plans for the Project. The state defendants also move to dismiss the plaintiffs' state law claims on the grounds that the plaintiffs' claims are barred by the eleventh amendment.[1] For the reasons stated below, the plaintiffs' motion should be denied and the state defendants' motion to dismiss the plaintiffs' state claims should be granted.

### I.

■ It is well-established that in the First Circuit, the plaintiffs must satisfy four criteria in order to be entitled to a

---

1. Counts IV–VI and VIII of the plaintiffs' Amended Complaint allege claims arising under Massachusetts law.

preliminary injunction. The Court may grant such an injunction if it finds that: (1) that the plaintiff will suffer irreparable injury if the injunction is not granted; (2) that such injury outweighs any harm which granting injunctive relief would inflict on the defendant; (3) that the plaintiff has exhibited a likelihood of success on the merits; and (4) that the public interest will not be adversely affected by the granting of the injunction. *Camel Hair & Cashmere Inst., Inc. v. Associated Dry Goods Corp.,* 799 F.2d 6, 12 (1st Cir.1986); *Planned Parenthood League v. Bellotti,* 641 F.2d 1006, 1009 (1st Cir.1981). The First Circuit has also emphasized that each of these elements must be independently satisfied by the applicant. *See Auburn News Co. v. Providence Journal Co.,* 659 F.2d 273, 277 (1st Cir.1981); *Massachusetts Coalition of Citizens with Disabilities v. Civil Defense Agency & Office of Emergency Preparedness,* 649 F.2d 71, 74 (1st Cir.1981). Upon examination of the facts of this case, in light of the four elements required for the issuance of injunctive relief, this Court finds that the plaintiffs have not met their burden of establishing irreparable harm. The plaintiffs' failure to demonstrate the existence of an immediate threat of harm is sufficient to warrant the denial of injunctive relief.

■ In response to the plaintiffs' motion, the defendants argue that the plaintiffs will not suffer irreparable harm prior to trial, from the alleged air pollution that will flow through the CA/T's ventilation facility, because the actual construction of the ventilation facility has not yet begun. The defendants further contend that it will be several years before the construction of the ventilation facility will be completed, well after the completion of the instant litigation.

■ The first factor for consideration is the critical question of whether the plaintiffs have demonstrated irreparable injury. *See K–Mart Corp. v. Oriental Plaza, Inc.,* 875 F.2d 907, 914 (1st Cir.1989) ("The irreparability of the injury is of paramount concern."). This element is satisfied if it is established that if the injunction is not granted, the plaintiffs are likely to suffer irreparable injury before a decision is rendered on the merits. Irreparable injury is that injury for which money damages are not adequate compensation. *Auburn News,* 659 F.2d at 277. To establish irreparable harm there must be an actual, viable, presently existing threat of serious harm. *See Massachusetts Coalition,* 649 F.2d at 74 ("Only a viable threat of serious harm which cannot be undone authorizes exercise of a court's equitable power to enjoin before the merits are fully determined."); *see also K–Mart Corp.,* 875 F.2d at 914.

Plaintiffs must establish injury that is not remote or speculative, but is actual and imminent. *See United States v. W.T. Grant Co.,* 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953); *Tucker Anthony Realty Corp. v. Schlesinger,* 888 F.2d 969, 975 (2d Cir.1989); *Environmental Defense Fund, Inc. v. Morton,* 420 F.Supp. 1037, 1046–47 (D.Mont.1976), *aff'd in part and rev'd in part,* 596 F.2d 848 (9th Cir.1979). In other words, the applicant must show that the injury complained of is of such imminence that there is a "clear and present need for relief to prevent irreparable harm." *Wisconsin Gas Co. v. Federal Energy Regulatory Comm'n,* 758 F.2d 669, 674 (D.C.Cir.1985) (quoting *Ashland Oil Inc. v. FTC,* 409 F.Supp. 297, 307 (D.D.C.), *aff'd,* 548 F.2d 977 (D.C.Cir.1976)). Thus, an injunction will not be issued to prevent the possibility of some remote future injury; a presently existing actual threat must be shown.

The plaintiffs' first allegation of irreparable injury is that if the Project is not immediately enjoined pending an air quality review of the ventilation facility to ensure compliance with the Clean Air Act, the "bureaucratic commitment" to the Project will preclude any meaningful administrative review. In support of this bureaucratic commitment theory, the plaintiffs cite a number of cases arising under the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321–47 *et seq.* (1970). *See Sierra Club v. Marsh,* 872 F.2d 497, 502 (1st Cir.1989) (NEPA is a procedural statute which requires that a decisionmaker follow

an elaborate evaluative process and take into consideration all significant environmental impacts before choosing a course of action).

The cases cited by the plaintiffs in support of this bureaucratic commitment theory are distinguishable from the facts before this Court. NEPA is a purely procedural statute that demands that a government official or agency consider all relevant environmental impacts before committing themselves to a course of action. *See Marsh*, 872 F.2d at 500, 502; *Massachusetts v. Watt*, 716 F.2d 946, 952 (1st Cir. 1983). Thus, "when a decision to which NEPA obligations attach is made without informed environmental consideration that NEPA requires, the harm that NEPA intends to prevent has been suffered." *Watt*, 716 F.2d at 952. In contrast, the focus and primary purpose of the Clean Air Act is to "promote and enhance the quality of the Nation's air resources," not the permit process itself. *See* 42 U.S.C. § 7401(a)(4) (1977). The substantive provisions of the Clean Air Act, unlike NEPA, will require an agency to change direction or alter a project already underway to ensure compliance with its provisions. Whereas, NEPA cannot require an agency to choose a new or different course of action, it may only force an agency to consider all relevant data before making a decision. *See Marsh*, 872 F.2d at 502–03. Under NEPA courts have recognized the bureaucratic commitment theory as a relevant factor in considering whether or not to grant injunctive relief because NEPA cannot require an agency to alter its present course of action and it is often necessary to enjoin a project to require compliance with NEPA before the agency becomes even more committed to the project initially chosen. *Id.* Thus, this Court finds the plaintiffs' bureaucratic commitment argument unpersuasive in establishing irreparable harm.[2]

The plaintiffs next argue that injunctive relief is required to prevent the economic waste which would result if the ventilation facility has to be reconstructed to comply with the Clean Air Act. The Act, however, does not prohibit economic waste, but only pollution in violation of its provisions. Second, the Project still must complete the federal environmental reporting process and numerous state and federal permits must be obtained before construction may proceed. Finally, this lawsuit will be completed before the construction of the ventilation facility begins. Under the ten-year "fast track" Master Schedule, the Third Harbor Tunnel is not scheduled to be completed until 1994 and the entire Project is not to be completed until 1998. (Twomey, Amended Affidavit, ¶¶ 9–11). The plaintiffs' claim for injunctive relief, therefore, is premature because the environmental reporting process is still ongoing and the construction of the ventilation system is not scheduled to begin for a number of years. In light of these facts, this Court finds that the plaintiffs have failed to establish a real or imminent injury or threat of injury. In sum, having examined all the appropriate factors and concluding that the plaintiffs have not established irreparable harm, this Court need not discuss the remaining three elements required for the issuance of injunctive relief in the text of this opinion.

## II.

▪ The next issue this Court must address is the state defendants' motion to dismiss the plaintiffs' pendent state law claims for failure to state a claim upon which relief can be granted.[3] They argue

---

**2.** In this case the NEPA process is still under way, and thus any NEPA claim is currently premature for review.

**3.** Counts IV–VI and VII of the plaintiffs' Amended Complaint are asserted against the following state defendants: Richard Taylor, as Secretary of the Massachusetts Executive Office of Transportation and Construction; James J. Kerasiotes, as Commissioner of the Massachusetts De-

partment of Public Works; Susan F. Tierney, as Secretary of the Massachusetts Executive Office of Environmental Affairs; and Daniel S. Greenbaum, as Commissioner of the Massachusetts Department of Environmental Protection. The plaintiffs do not allege and nothing in the record indicates, that these state officials acted *ultra vires*—"without any authority whatever." *See Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 101 n. 11, 104 S.Ct. 900, 908 n.

that these claims are barred from being heard by this Court by the eleventh amendment. Pendent jurisdiction exists whenever the state and federal claims "derive from a common nucleus of operative fact" and are such the plaintiffs "would ordinarily be expected to try them all in one judicial proceeding." *United Mine Workers v. Gibbs*, 383 U.S. 715, 718, 86 S.Ct. 1130, 1135, 16 L.Ed.2d 218 (1966). If the claims are pendent under this standard, this Court may, in its discretion, retain the state law claims. In this instance, however, the pendent state law claims should be dismissed because the Court is without jurisdiction to hear these claims.

■ It is well-established that the eleventh amendment bars federal jurisdiction over state law claims against a state official when the state is the "real, substantial party in interest." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 101, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984) (quoting *Ford Motor Co. v. Department of Treasury of Indiana*, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945)). A suit for damages against a state official in his official capacity is in effect a suit for damages against the state. *Brandon v. Holt*, 469 U.S. 464, 471–72, 105 S.Ct. 873, 877–78, 83 L.Ed.2d 878 (1985); *Pennhurst*, 465 U.S. at 101, 104 S.Ct. at 908. This jurisdictional bar applies regardless of whether the relief sought is prospective or retrospective. *Pennhurst*, 465 U.S. at 106, 104 S.Ct. at 911; *Avery v. Powell*, 695 F.Supp. 632, 641 (D.N.H.1988). Moreover, the bar applies "to state law claims brought into federal court under pendent jurisdiction." *Pennhurst*, 465 U.S. at 121, 104 S.Ct. at 919; *Garrity v. Sununu*, 752 F.2d 727, 737 (1st Cir.1984); *Avery*, 695 F.Supp. at 641. Thus, under *Pennhurst* courts have held that the eleventh amendment precludes federal court review of environmental claims arising under state law, even when such claims are pendent to federal claims. *See, e.g., Allegheny County Sanitary Auth. v. United States Envtl. Protection Agency*, 732 F.2d 1167, 1173–74

(3d Cir.1984) (court dismissed state environmental claims pendent to claims under the federal Water Pollution Control Act); *Ringbolt Farms Homeowners Association v. Town of Hull*, 714 F.Supp. 1246, 1250–51 (D.Mass.1989) (court dismissed state environmental claims pendent to claims under the federal Resource Conservation Act and Recovery Act and the Water Pollution Control Act).

Plaintiffs assert that the state defendants, while acting in their official capacities, violated Massachusetts law pertaining to the Department of Environmental Protection's adoption of the 1991 regulation exempting the CA/T's ventilation facility from pre-construction review and permitting procedures. Accordingly, these claims are barred by the eleventh amendment under *Pennhurst*. Therefore, the state defendants' motion to dismiss plaintiffs' pendent state claims should be granted.

For these reasons stated above, the preliminary injunctive relief requested by the plaintiffs should be denied and the state defendants' motion to dismiss Counts IV–VI and VIII of the plaintiffs' Amended Complaint should be granted.

11, 79 L.Ed.2d 67 (1984) (quoting *Florida Dept. of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 697, 102 S.Ct. 3304, 3321, 73 L.Ed.2d 1057 (1982)) (claims against state officials acting *ultra vires* are not barred by the eleventh amendment).